## Samuel Potter, William Page and Thomas Price *against* John Norman and Joseph Norman.

One in custody under a *ca. sa.* gave bond with security to comply with the requisites of the insolvent law of 4th April 1798. Having petitioned, and being opposed by his creditors, proceedings were stayed until the next August term, and a new bond given. At the August term, it was objected that he had not filed an inventory of his debts and credits with his petition, but the case was continued under advisement, and he did not surrender himself. In November term the court discharged the petition on account of irregularity; adjudged that the second bond was forfeited.

Case stated.

The argument in this cause having been resumed on the 24th March 1807, the counsel disagreed, as to the fact of a new petition having been presented to the Court of Common Pleas of Montgomery county, in August term 1800 ; and as it did not appear by the case stated, how that fact really was, it was proposed to ascertain it, and amend the state of the case accordingly. But the counsel not having come to any agreement as to the point to be ascertained, the argument was renewed two days afterwards.

The arguments were substantially the same as in March term 1802 ; but the counsel for the plaintiffs made another point, that a new petition not having been exhibited in August term 1800, the bond certainly became forfeited. The only petition stated in the case was that preferred in May term 1800, and the proceedings were stayed in June until August term following, when the petition was moved to be discharged on the part of the creditors. But the petition antecedently filed could not with propriety be acted upon. The act of the 4th April 1798, (4 St. Laws 269,) refers in clear terms to a petition filed subsequent to the giving of the bond.

To this the defendant's counsel made no other answer, than that the case through oversight had not been fully stated. The

fact was, that the first bond was utterly void by not pursuing the words of the act, and hence it was agreed that a new bond should be given to supply the defects of the former. The argument *before did not proceed on the ground of a new petition, not being filed, but that the debtor did not surrender himself in August term 1800, or give a new bond.

The court declared, that the invalidity of the first bond formed no part of the case as stated, and to which the court were confined.

The opinions of the judges were afterwards delivered in substance as follows.

TILGHMAN, C. J.   I have felt considerable difficulty in deciding this case.   I believe however, that difficulty has arisen, not so much from the intricacy of the question, as from my desire to relieve the defendants from what I consider as a hardship. But the bond is too strong to be got over.   The defendant John Norman was arrested on a *ca. sa.* in the vacation.   His case falls within the 14th section of the insolvent law of 4th April 1798.

The condition of the bond is nearly in the words of the act of assembly.   It is " that he shall appear at the next county court " and surrender himself to prison, in case he does not comply " with the act of assembly."

The words of the act are, " that he shall appear and surrender " himself in prison, in case on his said appearance, he does not " comply with all things required by this act to procure his dis-" charge."   They are in substance not different; and no doubt the bond was intended to be in pursuance of the act of assembly. Before the bond was given, the plaintiff had an interest in John Norman's imprisonment.   It was the only means he had of procuring satisfaction for his debt.   On John Norman's being liberated, when he gave the bond, the plaintiff had an interest in his honest and faithful compliance with the insolvent law ; he had a right to expect an account of his property and a surrender of it, and unless he took the first step pointed out by the law at the court ensuing the date of the bond, which was to exhibit a petition, with a schedule annexed to it, containing an account on oath of all his property, he was obliged both by the words and spirit of the law, to surrender himself to prison.   The case stated does not say whether he filed a new petition at August term.   We cannot say that he did, because that fact is not stated. But whether he did or not, it is clear that he failed in complying with a material part of his duty, viz. giving an account of his property on oath.   The court did not hinder him from complying with the law.   They continued the matter under advisement, and at length determined, that the law had not been complied with.   John Norman might very easily have filed a new petition at the August term, to remove the objection made by his *creditors; or he might have surrendered himself to prison, till the point was decided.   But by remaining out of prison,

he acted at his own peril, and incurred a forfeiture of the bond, unless the court should determine that his petition was regular. I am of opinion, that the bond was forfeited, and that judgment be entered for the plaintiff.

YEATES, J.    When this case was argued before the court in March term 1802, the plaintiff's counsel insisted that the bond of 20th June 1798 was forfeited, by reason of John Norman's not complying with the requisites of the act of 4th April 1798, by surrendering himself to prison at the August term following, when he did not procure himself to be discharged.    The want of a petition in pursuance of his bond, was not then contended for as any ground of forfeiture.    I concurred at that time in opinion with the then chief justice, and can yet see no reason for altering that opinion, that the bond was not forfeited on the ground insisted upon.

It must be admitted, that the intentions of the legislature in enacting the law under consideration, pursued the spirit of the constitution, and were very humane.    The title of the act and all its provisions fully evince this.    With the policy of the law, and particularly of the 14th section, I have nothing to do.    I would reluctantly strain any of the words, either to impute a *mala fides* to an unfortunate debtor, or to charge his bail.    The essence of the bond given with security by the debtor in vacation, I take to be his personal appearance at the next term, to prosecute with good faith his discharge under the act.    But nevertheless, if it could be fairly collected from the case, that the application was merely evasive and illusory, and that it did not proceed on an honest intention of enlargement of the debtor under the true spirit of the law, I would visit the sin of the principal upon the security and hold him answerable to the creditor.    It has been asked, why a debtor in execution, with friends who will give bail for his appearance, should be in a better situation than one who has it not in his power to give security while the application is under consideration?    I answer, the line of distinction has been drawn by the sovereign will of the community by which we are bound.    If the court had in the August term decided, that the petition "containing no just and "true account of his debts, credits and estate, real and personal," was irregular, and could not be received, John Norman might have petitioned *de novo*, rectifying the former error. But the matter was postponed by the act of the court, and their power in this particular cannot be questioned.    Until their decision *had been made on the motion of the creditors, I [*391 do not conceive that the debtor was bound to surrender himself.

A new point has been made during the present argument, that the bond was forfeited, by not filing a new petition in pursuance thereof.    The case is not fully stated.    Whether the new bond

[Potter, Page and Price *v.* Norman.]

was taken in consequence of an application to any judge of this court, or of the Common Pleas in vacation, does not appear; nor how the new bond came to be executed; except that it is stated to have been entered into by agreement with the plaintiffs at that time. It certainly is not stated, that the plaintiffs by any act or agreement on their part, dispensed with the necessity of a petition; and we must decide on the statement as made. Nothing is said of the filing of any other petition, than that in May term 1800; and what is mentioned of the motion of the creditors to discharge the petition, can only refer by the fair rules of construction and common grammar to the petition filed, when he was first committed to the prison of Montgomery county. The validity of the bond is admitted by the case.

The 14th section of the act refers to the 1st and 2d sections, as to the mode of application by insolvent debtors; and the primary step prescribed thereby is a petition to the judges of the court, offering to deliver up to the use of his creditors all his property. Such petition is the *sine qua non* the court can proceed; and without it we cannot perceive any honest intention in the debtor of complying with the requisites of the law. On the ground of no petition being filed, agreeably to the tenor of the bond, I am of opinion, the same became forfeited, and that judgment be rendered for the plaintiffs, however hard the case may be. At the same time, for my own part, I must be permitted to express my regret, if the want of a full statement has prevented us from an inquiry into the true merits of the case.

BRACKENRIDGE, J. The act of assembly of 4th April 1798, prescribes a mode for the enlargement of debtors arrested in execution, by giving a bond to appear and comply with all the requisites of the act. A statement of his debts and credits under oath is a material requisite. A compliance with the requisites, or a surrender into custody, can alone save the bond. The court held the matter under advisement in this instance; but the debtor might have gone to prison, or given a new bond with the leave of the court.

The situation of the debtor under this act is different from debtors in custody. His liberty is at the expence of the creditor, who loses the hold of him by imprisonment to bring the debtor to a surrender. The creditor, on forfeiture of the bond, has an interest vested in him to compel the payment of his debt. *That ought to be paid before relief from the bond; because the very circumstance of the three months liberty, which he has gained by evasion, may be the very means of depriving the creditor of his debt. The common law analogy of relief on bail bonds, does not in reason or justice apply to such a case.

I had no doubt whatever on the former argument, when Judge SMITH and I were of opinion that the bond was forfeit-

ed.  I have no doubt now, when the case has been more fully argued.

Judgment for the plaintiffs.

Cited in 96 Pa. 168, where the court said: " As far back as the case of Potter *v.* Norman, 4 Yeates 388, and under the Insolvent Act of 1798, we have it said by Chief Justice TILGHMAN, that the creditor had a right to have an account of the debtor's property and a surrender of it, and if he did not comply with the law by exhibiting his petition with a schedule annexed to it, containing an account, on oath of all his property, he was obliged to surrender himself to prison." Thus, it would seem, that this eminent jurist was of opinion that the alternative ran through all the proceedings, and that the defendant might save his sureties by a surrender of his person at any time.  This statement is probably broader than subsequent decisions will sustain, for, in Kelly *v.* Stepney, 4 Watts 69, it was held that a surrender before the day of appearance would not discharge the debtor remanded on hearing. A similar ruling was had in Wolfram *v.* Strickhouser, 1 W. & S. 379, where it was determined that the want of an appearance forfeited the bond, though there was a surrender.  Detwiler *v.* Casselberry, 5 Id. 179, carries the ruling as far, and perhaps farther, against the insolvent than any other case.  It is, indeed, extremely harsh and technical; rejecting the petition because the affidavit was made before the prothonotary, who was not empowered to administer the oath, and holding the bond not discharged by the surrender to jail of the principal, yet, even this case does not support the ruling of the court below in the action now before us.  To us, the reasonable rule seems to be that held in McDonough's Case, 1 Wright 275, that, in order to save his bond, the insolvent must, on the day fixed for hearing, ask for his discharge, surrender himself to jail to procure a continuance.